1  GEORGE E. SCHULMAN (State Bar No. 064572)
   JOHN N. TEDFORD, IV (State Bar No. 205537)
2  AARON E. DE LEEST (State Bar No. 216832)
   DANNING, GILL, DIAMOND & KOLLITZ, LLP
3  2029 Century Park East, Third Floor
   Los Angeles, California 90067-2904
4  Telephone: (310) 277-0077
   Facsimile: (310) 277-5735
5
   Attorneys for Plaintiff R. Todd Neilson, Chapter 7 Trustee
6

7

8                  **UNITED STATES BANKRUPTCY COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10                      **LOS ANGELES DIVISION**

11

12 | In re                                    | ) Case No. 2:04-35757-VZ
   |                                          | )
13 | PECK/JONES CONSTRUCTION                  | ) Chapter 7
   | CORPORATION,                             | )
14 |                                          | )
   |            Debtor.                       | )
15 |                                          | )
   |——————————————————————| )
16 | R. TODD NEILSON, CHAPTER 7 TRUSTEE,      | ) Adv. No. 2:07-01050-VZ
   |                                          | )
17 |            Plaintiff,                    | ) **NOTICE OF MOTION AND MOTION**
   |                                          | ) **IN LIMINE FOR AN ORDER**
18 |       vs.                                | ) **EXCLUDING CERTAIN TRIAL**
   |                                          | ) **WITNESSES AND/OR EXPERT**
19 | INTEGRATED MECHANICAL SYSTEMS,           | ) **TESTIMONY FROM CERTAIN TRIAL**
   | INC.,                                    | ) **WITNESSES; MEMORANDUM OF**
20 |                                          | ) **POINTS AND AUTHORITIES;**
   |            Defendant.                    | ) **REQUEST FOR JUDICIAL NOTICE**
21 |                                          | ) **AND DECLARATION OF AARON E. DE**
   |                                          | ) **LEEST IN SUPPORT THEREOF**
22 |                                          | )
   |                                          | ) Date:   December 11, 2008
23 |                                          | ) Time:   11:00 a.m.
   |                                          | ) Place:  Courtroom 1368
24 |                                          | )         255 E. Temple St.
   |                                          | )         Los Angeles, CA
25 |——————————————————————|

26

27

28

                                    -1-

329574.01 [XP]    24132

1 **TO THE HONORABLE VINCENT ZURZOLO, UNITED STATES BANKRUPTCY**

2 **JUDGE, AND INTERESTED PARTIES:**

3       PLEASE TAKE NOTICE that on December 11, 2008, at 11:00 a.m., Plaintiff R. Todd

4 Neilson, Chapter 7 trustee (the "Trustee" or "Plaintiff") for the estate of Peck/Jones Construction

5 Corporation (the "Debtor") moves to exclude the use of certain expert witness and/or expert

6 testimony at trial in the seven pending non-insider preference-related adversary proceedings.

7       This motion is based upon the Memorandum of Points and Authorities, the Declaration of

8 Aaron E. de Leest, the Request for Judicial Notice, the papers and pleadings on file in this Debtor's

9 main case and all the non-insider preference-related adversary proceedings, and such other

10 evidence that may be presented to the Court at the hearing.

11       PLEASE TAKE FURTHER NOTICE that any response to the motion must be in writing,

12 filed with the Clerk of the Court and served upon counsel for the Trustee not less than fourteen

13 days from the hearing.  If you do not have any objection to this motion, you need not take any

14 further action.

15

16 Dated: November 7, 2008           DANNING, GILL, DIAMOND & KOLLITZ, LLP

17

18                     By: _____

                        Aaron E. de Leest

19                         Attorneys for Plaintiff R. Todd Neilson,

                        Chapter 7 Trustee

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### INTRODUCTION

4    The Trustee hereby seeks to exclude at trial the use of certain expert witnesses and/or expert

5   testimony in the seven non-insider preference-related adversary proceedings (the "Related

6   Adversary Proceedings") currently pending before this Court.[1]  All of the purported experts appear

7   to be offered to prove the objective element to the defendants' ordinary course defense in this pre-

8   BAPCPA case.  To this end, this motion addresses each of the Trustee's objections to the expert

9   witnesses and/or testimony in the Related Adversary Proceedings.[2]  Identical motions will be filed

10   in each of the Related Adversary Proceedings.

11    The grounds for the motion are that such expert testimony is not admissible in light of the

12   standards laid out by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals

13   and Kumho Tire Co., Ltd. v. Carmichael.  In particular, the experts does not disclose whether their

14   theories can be or have been tested, whether they have been subjected to peer review and

15   publication, the known or potential rate of error, and whether they are generally accepted in the

16   pertinent community.  Accordingly, the Court should exclude the use of such witnesses at trial.

17    Furthermore, the Court should exclude any expert testimony from three of the defendants

18   on the grounds that such experts were not disclosed to the Trustee pursuant to Fed. R. Civ. P. Rule

19   37(c).

20

21

22

---

23   [1] The Related Adversary Proceedings are Neilson v. American Technologies, Inc. (2:07-01058-
24   VZ), Neilson v. D & M Steel (2:07-01060-VZ), Neilson v. DMG Corporation (2:07-01034-VZ),
Neilson v. Integrated Mechanical Systems (2:07-01050-VZ), Neilson v. Malcolm Drilling Co.
25   (2:07-01048-VZ), Neilson v. Weiss Sheet Metal (2:07-01026-VZ), and Neilson v. Western Allied
(2:07-01035-VZ).

26   [2] Although the grounds for objecting to each expert witness and/or expert testimony are different,
there overlap between the Related Adversary Proceedings and the objections are such that the
27   Trustee believes that one motion is the most efficient.

28

-3-

## II.

## STATEMENT OF FACTS

A.    **Bankruptcy Facts**

On or about December 14, 2004 (the "Petition Date"), an involuntary Chapter 7 petition for relief was filed against the Debtor.  On or about January 21, 2005, the Court entered its Order for Relief in the Debtor's bankruptcy case.  The Trustee accepted appointment as the Chapter 7 trustee for the Debtor's estate and continues to serve in such capacity for the benefit of creditors.

On or about January 19, 2007, the Trustee filed seven complaints to avoid and recover certain preferential transfers (the "Complaints") against the defendants in the Related Adversary Proceedings.

On or about December 20, 2007, the Court entered a scheduling order in the Related Adversary Proceedings providing, among other things, that the date by which the defendants were to designate expert(s) and serve any expert report(s) was February 15, 2008.  Pursuant to an order entered on May 14, 2008, the deadline for D&M Steel, Inc., to designate its expert witness was continued to May 23, 2008.  The deadline for the other defendants remained February 15, 2008.

A continued pre-trial conference is currently set for December 11, 2008, in the Related Adversary Proceedings.

B.    **American Technologies**

American Technologies, Inc. ("ATI") timely designated John Tolman as its expert witness. According to his deposition testimony, Mr. Tolman was retained by ATI's counsel to render an opinion on "the relationship of contractors and subcontractors in the construction industry, generally, as to the ordinary course of business with respect to general contractors payments to subcontractors."[3]  His opinion is that "the range for contractors to pay subcontractors during the ordinary course of business is very broad in the construction industry."[4]  The range is "somewhere

---

[3] Tolman Deposition Transcript, Exhibit 1, p. 25, ll. 7-12 and p. 50-51, ll. 24-16.

[4] Tolman Deposition Transcript, Exhibit 1, p. 51, ll. 11-13.

1 between 60 to 120 days after a subcontractor presents an invoice."[5]  However, he has not

2 personally done an industry wide study of the payment range.[6]

3 **C.     D & M Steel**

4        D & M Steel ("D&M") timely designated Tom Keeton as its expert witness.  According to

5 his expert report, Mr. Keeton was retained to render an opinion on whether two payments that

6 D&M received from the Debtor were made in the ordinary course of business.[7]  His opinion is that

7 both payments were made within the ordinary course of business.[8]  According to his expert report,

8 Mr. Keeton does not appear to have authored any study or published any articles at all, let alone the

9 subject of his expert testimony.   Due to an agreement of the parties, Mr. Keeton's deposition has

10 not yet been taken.

11 **D.     DMG Corporation**

12        DMG Corporation ("DMG") timely designated Ron Clement and George Orff as its expert

13 witnesses.

14              1.     **Ron Clement**

15        According to his deposition testimony, Mr. Clement was the "owner's representative" at the

16 RFK Medical Center project.[9]  His duties included overseeing the project on behalf of the

17 Daughters of Charity, who were the owners of the RFK Medical Center.[10]

18        During his deposition, Mr. Clement sought to offer his opinion on "how I did my job as a

19 representative of the Daughters of Charity."[11]  When pressed further, Mr. Clement explained that

20

---

21 [5] Tolman Deposition Transcript, Exhibit 1, p. 51, ll. 15-16.

22 [6] Tolman Deposition Transcript, Exhibit 1, p. 55, ll. 20-23.

23 [7] Keeton Expert Report, Exhibit 2, p. 1.

24 [8] Keeton Expert Report, Exhibit 2, p. 10 and p. 12.

25 [9] Clement Deposition Transcript, Exhibit 3, p. 10, ll. 24.

26 [10] Clement Deposition Transcript, Exhibit 3, p. 11, ll. 2-3.

27 [11] Clement Deposition Transcript, Exhibit 3 p. 6, ll. 12-17.

28

329574.01 [XP]     24132

1 | he was prepared to testify to the process in which payment is made by the owner.[12]  He testified

2 | that "the process in which payment, you know, is applied for; how it was reviewed; how the checks

3 | were ultimately issued on a monthly basis to Peck/Jones; and then, you know, how they, in turn,

4 | were expected to pay their suppliers and subcontractors as a result of that pay application."[13]

5 |     Mr. Clement went on to testify that "most contractors do not pay within 30 days" and that "I

6 | have seen it take anywhere from three to six months."[14]  However, he has not done any study.[15]

7 |     **2.**     **George Orff**

8 |     According to his deposition testimony, Mr. Orff was the former president of DMG.[16]  While

9 | he was the president of DMG, Mr. Orff approved the contract between DMG and Peck/Jones.[17]

10 |     During his deposition, Mr. Orff sought to offer his opinion that "there was no preference in

11 | this particular action; there was a clerical mistake"[18] and that the transfers were in the ordinary

12 | course of business.[19]  Mr. Orff has not offered any study to support his conclusion that the

13 | transfers were in the ordinary course of business.

14 | E.    **Integrated Mechanical Systems**

15 |     Integrated Mechanical Systems ("IMS") timely designated Vachik Armenian and Stefan

16 | Malczewski as its expert witnesses.

17 |

18 |

19 |

20 | [12] Clement Deposition Transcript, Exhibit 3, p. 7-8, ll. 25-9.

21 | [13] Clement Deposition Transcript, Exhibit 3, p. 7-8, ll. 25-9.

22 | [14] Clement Deposition Transcript, Exhibit 3, p. 25, ll. 4-16.

23 | [15] Clement Deposition Transcript, Exhibit 3, p. 26, ll. 9-12 and p. 27, ll. 12-19.

24 | [16] Orff Deposition Transcript, Exhibit 4, p. 15, ll. 13-18.

25 | [17] Orff Deposition Transcript, Exhibit 4, p. 22, ll. 6-7.

26 | [18] Orff Deposition Transcript, Exhibit 4, p. 11, ll. 1-7 and p. 22, 11 6-18; and p. 23, ll. 9-13.

27 | [19] Orff Deposition Transcript, Exhibit 4, p. 62, ll. 2-7.

28 |

329574.01 [XP]    24132

1

### 1.    Vachik Armenian

Mr. Armenian is one of the officers of IMS.[20]  According to his deposition testimony, Mr. Armenian sought to offer his opinion that the payments IMS received were in the ordinary course of business.[21]  In particular, Mr. Armenian testified that "[n]ormally, it is anywhere between 45 to 60 days" before he is paid by a general contractor.[22]  However, Mr. Armenian has not offered any study or other basis to support his conclusion that the payments were in the ordinary course of business.

### 2.    Stefan Malczewski

Mr. Malczewski is the owner of Pacific West Mechanical, the pluming contractor on the RFK Medical Center project.[23]

According to his deposition testimony, Mr. Malczewski was retained to render an opinion on his "experience with Peck/Jones and their ordinary course of business."[24]  Mr. Malczewski opined that "everything he saw was within the ordinary course of business for Peck/Jones."[25]  Mr. Malxzewski also opined that the money that Peck/Jones was paid by the owner of the project were "trust funds."[26]

### F.    Malcolm Drilling Co.,

Malcolm Drilling Co. ("Malcolm") did not designate any expert witnesses.

---

[20] Armenian Deposition Transcript, Exhibit 5, p. 7, ll. 14.

[21] Armenian Deposition Transcript, Exhibit 5, p. 10, ll. 20-21 and p. 11, ll. 2-6.

[22] Armenian Deposition Transcript, Exhibit 5, p. 53, ll. 16-18.

[23] Malczewski Deposition Transcript, Exhibit 6, p. 9-10, ll. 25-7.

[24] Malczewski Deposition Transcript, Exhibit 6, p. 36, ll. 9-14.

[25] Malczewski Deposition Transcript, Exhibit 6, p. 42-43, ll. 25-11.

[26] Malczewski Deposition Transcript, Exhibit 6, p. 72-73, ll. 25-2.

1   G.   **Weiss Sheet Metal**

2       Weiss Sheet Metal ("Weiss") did not designate any expert witnesses.

3   H.   **Western Allied**

4       Western Allied ("Western") did not designate any expert witnesses.

5

6                                    **III.**

7                                 **ARGUMENT**

8   A.   **The Standard of Review for Expert Testimony**

9       Rule 702 of the Federal Rules of Civil Procedure provides that:

10      If scientific, technical, or other specialized knowledge will assist the trier of fact to
11      understand the evidence or to determine a fact in issue, a witness qualified as an
        expert by knowledge, skill, experience, training, or education, may testify thereto in
12      the form of an opinion or otherwise, if (1) the testimony is based upon sufficient
        facts or data, (2) the testimony is the product of reliable principles and methods, and
13      (3) the witness has applied the principles and methods reliably to the facts of the
        case.
14

15      In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court
16
    provided guidelines for the admissibility of an expert under Fed. R. Civ. P. 702. In particular,
17
    Daubert requires that the court must engage in a two-part analysis. Daubert, 509 U.S. at 549-591;
18
    see also, Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1315 (9th Cir. 1995)
19
    ("Daubert II"). The two part analysis first looks at whether the experts' testimony reflects
20
    "scientific knowledge," whether their findings are "derived by the scientific method," and whether
21
    their work product amounts to "good science." Second, the Court must evaluate whether the
22
    proposed expert testimony is "relevant to the task at hand" and that it logically advances a material
23
    aspect of the proposing party's case. Daubert, 509 U.S. at 593-94; Daubert II, 43 F.3d 1315.
24
        In evaluating the first prong, Daubert focused on several factors to the admissibility of
25
    expert witnesses based on "scientific, technical, or other specialized knowledge." In particular,
26
    Daubert looked at:
27
            a.      whether a theory or technique can be or has been tested;
28

                                        -8-

1        b.      whether the theory or technique has been subjected to peer review and publication

2        c.      the known or potential rate of error; and

3        d.      "general acceptance" in the pertinent scientific community. <u>Daubert</u>, 509 U.S. at

4 593-594.

5       In <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137 (1999), the Supreme Court expanded

6 on its ruling in <u>Daubert</u> and held that the basic gate keeping obligation of <u>Daubert</u> applies to all

7 expert testimony not just "scientific" testimony. <u>Kumho</u>, 526 U.S. at 150.

8       Furthermore, in evaluating expert testimony, <u>Daubert II</u> provides that "[i]f the proffered

9 expert testimony is not based on independent research, the party proffering it must come forward

10 with other objective, verifiable evidence that the testimony is based on 'scientifically valid

11 principles'" such as peer review and publication in a peer-reviewed journal. <u>Daubert II</u>, 43 F.3d at

12 1317-18.

13 **B.**      <u>**The Court Should Exclude Expert Testimony from the Designated Expert Witnesses**</u>

14       In the Related Adversary Proceedings, the Defendants have offered a total of six expert

15 witnesses to testify in support of their affirmative defenses based on ordinary course of business as

16 set forth in § 547(c)(2).

17       Section 547(c)(2) provides that:

18       (c) The trustee may not avoid under this section a transfer—

19       . . .

20       (2) to the extent that such transfer was in payment of a debt incurred by the debtor
21       in the ordinary course of business or financial affairs of the debtor and the
       transferee, and such transfer was—

22       (A) made in the ordinary course of business or financial affairs of the debtor and the
23       transferee; and

24       (B) made according to ordinary business terms.

25

26       Here, the Defendants are utilizing expert testimony to establish that the payments they

27 received from the Debtor were made "according to ordinary business terms" as found in §

28 574(c)(2)(B). Section 547(c)(2)(B) requires a showing that the relevant payments were "ordinary

1    in relation to prevailing business terms." In re Food Catering & Housing, Inc., 971 F.2d 396, 398

2    (9th Cir. 1992). This element has been broken down into two components. First the creditor must

3    establish the "broad range" of business terms employed by similarly situated debtors and creditors,

4    including those in financial distress, during the relevant period. Second, the creditor must show

5    that the relevant payments were "ordinary in relation to [these] prevailing business terms." In re

6    Healthcentral.com, 504 F.3d 775, 791 (9th Cir. 2007) (citing, In re Jan Weilert RV, Inc., 315 F.3d

7    1192, 1197-98 (9th Cir. 2003)).

8         However, when the admissibility standards discussed above are applied to the Defendants'

9    experts, none of the experts are qualified to offer an opinion as to: (1) the broad range of business

10   terms employed by similarly situated debtors and creditors, including those in financial distress,

11   during the relevant period; or (2) that the relevant payments were ordinary in relation to the

12   prevailing business terms. Each of the experts is discussed individually below.

13        1.    **American Technologies**

14        As discussed above, Mr. Tolman was retained by ATI's counsel to render an opinion on

15   "the relationship of contractors and subcontractors in the construction industry, generally, as to the

16   ordinary course of business with respect to general contractors payments to subcontractors."[27] His

17   opinion is that "the range for contractors to pay subcontractors during the ordinary course of

18   business is very broad in the construction industry."[28] The range is "somewhere between 60 to 120

19   days after a subcontractor presents an invoice."[29]

20        However, in light of Daubert and Kumho, Mr. Tolman's expert testimony is not admissible.

21   In particular, Mr. Tolman's testimony as to the industry standard has not been subject to peer

22   review or publication and it is not known whether it is generally accepted in the construction

23   industry. Mr. Tolman has not authored any reports and, furthermore, the only report that Mr.

24

25   [27] Tolman Deposition Transcript, Exhibit 1, p. 25, ll. 7-12 and p. 50-51, ll. 24-16.

26   [28] Tolman Deposition Transcript, Exhibit 1, p. 51, ll. 11-13.

27   [29] Tolman Deposition Transcript, Exhibit 1, p. 51, ll. 15-16.

28

-10-

1  Tolman relied upon did not set forth the payment range and only noted that late payment by

2  contractors to subcontractors was an issue of very high importance.[30]

3        **2.**    **D & M Steel**

4       As discussed above, D&M retained Mr. Keeton as its expert witness to render an opinion as

5  to whether the two payments D&M received from the Debtor were made in the ordinary course of

6  business.[31]  His opinion is that both payments were made within the ordinary course of business.[32]

7  However, as discussed above with respect to other experts, Mr. Keeton's testimony is not

8  admissible in light of the standards laid out in Daubert and Kumho.  In particular, Mr. Keeton's

9  expert report does not disclose whether his theory can be or has been tested, whether it has been

10  subjected to peer review and publication, the known or potential rate of error, and the general

11  acceptance in the pertinent community.  Furthermore, Mr. Keeton's report does not comply with

12  Fed. R. Civ. P. 26(a)(2)(B) as it does not provide either Mr. Keeton's qualifications including a list

13  of any publications authored within the previous 10 years, a list of cases in which he has testified as

14  an expert at trial, or a statement of the compensation he is to be paid.  For all these reasons, Mr.

15  Keeton should not be allowed to testify at trial as an expert witness.

16        **3.**    **DMG Corporation**

17            **a.**    **Ron Clement**

18       DMG designated Ron Clement as an expert witnesses to testify as to the "the process in

19  which payment, you know, is applied for; how it was reviewed; how the checks were ultimately

20  issued on a monthly basis to Peck/Jones; and then, you know, how they, in turn, were expected to

21  pay their suppliers and subcontractors as a result of that pay application."[33]  He went on to say that

22

23

_____

24  [30] Tolman Deposition Transcript, Exhibit 1, p. 38-40, ll. 15-8, p.55, ll. 20-25, and p.56, ll. 8-23.

25  [31] Keeton Expert Report, Exhibit 2, p. 1.

26  [32] Keeton Expert Report, Exhibit 2, p. 10 and p. 12.

27  [33] Clement Deposition Transcript, Exhibit 3, p. 7-8, ll. 25-9.

28

329574.01 [XP]    24132

1  "most contractors do not pay within 30 days" and that "I have seen it take anywhere from three to

2  six months."[34]

3       Again, as discussed above with respect to the other witnesses, Mr. Clement's expert

4  testimony is not admissible. Mr. Clement is a percipient witness of many of the facts at issue. He

5  was the "owner's representative" at the RFK Medical Center project.[35] His duties included

6  overseeing the project on behalf of the Daughters of Charity, who were the owners of the RFK

7  Medical Center.[36] However, he is not an expert as to the ordinary course standard. There is no

8  evidence that Mr. Clement is testifying to the "industry" standard. All he appears to be testifying

9  to is to the process of payments between the owner and the Debtor. He specifically testified that "I

10 don't have a relationship with the subcontractors and suppliers. My contract is with the general."[37]

11 Furthermore, Mr. Clement's testimony (i.e. that "most contractors do not pay within 30 days") has

12 not been subject to any peer review or publication and it is not known whether it is generally

13 accepted in the construction industry. Mr. Clement has also not authored or relied upon any study

14 to reach his opinion.[38]

15            **b.    George Orff**

16      DMG designated Mr. Orff to offer his opinion that "there was no preference in this

17 particular action; there was a clerical mistake"[39] and that the transfers were in the ordinary course

18 of business.[40]  As discussed above with respect to other witnesses, Mr. Orff is not qualified to offer

19 expert testimony on either issue. Mr. Orff is a percipient witness of the events. According to his

20

21 [34] Clement Deposition Transcript, Exhibit 3, p. 25, ll. 4-16.

22 [35] Clement Deposition Transcript, Exhibit 3, p. 10, ll. 24.

23 [36] Clement Deposition Transcript, Exhibit 3, p. 11, ll. 2-3.

24 [37] Clement Deposition Transcript, Exhibit 3, p. 27, ll. 16-19.

25 [38] Clement Deposition Transcript, Exhibit 3, p. 26, ll. 9-11 and p. 27-28, ll. 12-2.

26 [39] Orff Deposition Transcript, Exhibit 4, p. 11, ll. 1-7 and p. 22, 11 6-18; and p. 23, ll. 9-13.

27 [40] Orff Deposition Transcript, Exhibit 4, p. 62, ll. 2-7.

28

329574.01 [XP]    24132

1   deposition testimony, Mr. Orff was the former president of DMG[41] and he approved the

2   subcontract between DMG and Peck/Jones.[42]  With respect to his opinion testimony, again, as with

3   other witnesses, Mr. Orff testimony expert opinion has not been subject to any peer review or

4   publication and it is not known whether it is generally accepted in the construction industry.  Mr.

5   Orff has also not authored or relied upon any study to reach his opinion.

6       **4.**    <u>**Integrated Mechanical Systems**</u>

7           **a.**    <u>**Vachik Armenian**</u>

8        IMS designated Mr. Armenian to offer his opinion that the payments IMS received were in

9   the ordinary course of business.[43] and "[n]ormally, it is anywhere between 45 to 60 days" before he

10  is paid by a general contractor.[44]   However, as discussed above with respect to other witnesses,

11  Mr. Armenian is not qualified to offer expert testimony on this issue.  Mr. Armenian is one of the

12  officers of IMS.[45]  There is no evidence that Mr. Armenian's opinion has been subject to any peer

13  review or publication and it is unknown whether his opinion is generally accepted in the

14  construction industry.  Mr. Armenian has also not authored or relied upon any study to reach his

15  opinion.

16          **b.**    <u>**Stefan Malczewski**</u>

17       DMG retained Mr. Malczewski to offer expert testimony based upon his "experience with

18  Peck/Jones and their ordinary course of business."[46]  Mr. Malczewski opined that "everything he

19  saw was within the ordinary course of business for Peck/Jones."[47]   However, Mr. Malczewski is

20

21  [41] Orff Deposition Transcript, Exhibit 4, p. 15, ll. 13-18.

22  [42] Orff Deposition Transcript, Exhibit 4, p. 22, ll. 6-7.

23  [43] Armenian Deposition Transcript, Exhibit 5, p. 10, ll. 20-21 and p. 11, ll. 2-6.

24  [44] Armenian Deposition Transcript, Exhibit 5, p. 53, ll. 16-18.

25  [45] Armenian Deposition Transcript, Exhibit 5, p. 7, ll. 14.

26  [46] Malczewski Deposition Transcript, Exhibit 6, p. 36, ll. 9-14.

27  [47] Malczewski Deposition Transcript, Exhibit 6, p. 42-43, ll. 25-11.

28

329574.01 [XP]    24132

1  simply a percipient witness of the events.  Mr. Malczewski was the pluming contractor on the RFK

2  Medical Center project.[48]

3        With respect to the application of <u>Daubert</u> and <u>Kumho</u>, there is no testimony that Mr.

4  Malczewski's opinion has been subject to any peer review or publication and it is unknown

5  whether his opinion is generally accepted in the construction industry.  Essentially, Mr.

6  Malczewski formed his opinion that "everything he saw was within the ordinary course of business

7  for Peck/Jones"[49] after his review of on box of information consisting of the IMS "job files for this

8  job."[50]  Such a cursory and unscientific review does not meet the standards set forth in <u>Daubert</u>.

9  **C.    The Court Should Exclude Expert Testimony Where No Experts were Designated**

10        The Trustee moves to exclude any expert testimony from defendants Malcolm, Weiss, and

11  Western on the grounds that such experts were not disclosed to the Trustee.

12

13        Rule 37(c) of the Federal Rules of Civil Procedure provides that:

14        (c) Failure to Disclose; to Supplement an Earlier Response, or to Admit.

15        (1) Failure to Disclose or Supplement.

16        If a party fails to provide information or identify a witness as required by Rule 26(a)
       or 26(e), the party is not allowed to use that information or witness to supply
17       evidence on a motion, at a hearing, or at a trial, unless the failure was substantially
       justified or is harmless.
18

19

20        Rule 26(a)(2) of the Federal Rules of Civil Procedure provides that:

21        (2) Disclosure of Expert Testimony.

22        (A) In General. In addition to the disclosures required by Rule 26(a)(1), a party
       must disclose to the other parties the identity of any witness it may use at trial to
23       present evidence under Federal Rule of Evidence 702, 703, or 705.

24        _____

25  [48] Malczewski Deposition Transcript, Exhibit 6, p. 9-10, ll. 25-7.

26  [49] Malczewski Deposition Transcript, Exhibit 6, p. 42-43, ll. 25-11.

27  [50] Malczewski Deposition Transcript, Exhibit 6, p. 39, ll. 1-7 and p. 42, ll. 15-19.

28

-14-

. . .

(C) Time to Disclose Expert Testimony. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

In the Related Adversary Proceedings, the Court set February 15, 2008, as the deadline to disclose expert witnesses. Defendants Malcolm, Weiss, and Western did not disclose any expert witnesses. Accordingly, to the extent that any of their trial witnesses seek to offer expert testimony on any issue, such testimony should be excluded pursuant to Fed. R. Civ. P. 37(c).

**IV.**

**CONCLUSION**

Wherefore, in view of the Trustee's arguments above, the Trustee requests that the Court exclude the expert testimony of Mr. Tolman, Mr. Keeton, Mr. Clement, Mr. Orff, Mr. Armenian, and Mr. Malczewski. The Trustee further requests that the Court exclude any expert testimony from Defendants Malcolm, Weiss, and Western on the grounds that no expert testimony was disclosed to the Trustee. The Trustee prays for all other appropriate relief.

Dated: November 7, 2008          DANNING, GILL, DIAMOND & KOLLITZ, LLP

By: _____
Aaron E. de Leest
Attorneys for Plaintiff R. Todd Neilson,
Chapter 7 Trustee

-15-

329574.01 [XP]    24132

# DECLARATION

## DECLARATION OF AARON E. DE LEEST

I, Aaron E. de Leest, declare as follows:

1.      I am an attorney, licensed and entitled to practice in the State of California.  I am an attorney at Danning, Gill, Diamond & Kollitz, LLP, the duly employed counsel for Plaintiff R. Todd Neilson the Chapter 7 Trustee (the "Trustee") of the estate of Peck/Jones Construction Corporation (the "Debtor").  I am one of the attorneys at that firm responsible for handling this case.  The facts stated herein are known to be true of my own personal knowledge.

2.      On or about May 23, 2008, my office received the preliminary expert report of opinion pertaining to preference payments made by Peck/Jones to D&M Steel from Jon Cantor, counsel for D&M Steel.  A true and correct copy of the expert report is attached hereto, marked as Exhibit "2" and incorporated herein by this reference.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 7, 2008 at Los Angeles, California.

                                                    _____
                                                    Aaron E. de Leest

-16-

329574.01 [XP]      24132

# REQUEST FOR JUDICIAL NOTICE

## REQUEST FOR JUDICIAL NOTICE

R. Todd Neilson, the Chapter 7 trustee herein (the "Trustee"), respectfully requests that the Court take judicial notice of the following facts which are reflected in the Court's files in these cases:

1.      On or about December 14, 2004 (the "Petition Date"), an involuntary Chapter 7 petition for relief was filed against the Debtor. On or about January 21, 2005, the Court entered its Order for Relief in the Debtor's bankruptcy case. The Trustee accepted appointment as the Chapter 7 trustee for the Debtor's estate and continues to serve in such capacity for the benefit of creditors.

2.      On or about January 19, 2007, the Trustee filed seven complaints to avoid and recover certain preferential transfers (the "Complaints") against the defendants in the Related Adversary Proceedings.

3.      On or about December 20, 2007, the Court entered a scheduling order in the Related Adversary Proceedings providing, among other things, that the date by which the defendants were to designate expert(s) and serve any expert report(s) was February 15, 2008. Pursuant to an order entered on May 14, 2008, the deadline for D&M Steel, Inc., to designate its expert witness was continued to May 23, 2008. The deadline for the other defendants remained February 15, 2008.

4.      A continued pre-trial conference is currently set for December 11, 2008, in the Related Adversary Proceedings.

Dated: November 7, 2008

DANNING, GILL, DIAMOND & KOLLITZ, LLP

By: _____
Aaron E. de Leest
Attorneys for Plaintiff R. Todd Neilson,
Chapter 7 Trustee

-17-

329574.01 [XP]    24132

**PROOF OF SERVICE**

I, Martha Gonzalez, declare:

I am employed by the law firm of DANNING, GILL, DIAMOND & KOLLITZ, LLP, in the County of Los Angeles, State of California. I am employed in the office of a member of the bar of this court at whose direction the service was made. I am over the age of 18 years and am not a party to the within action. My business address is 2029 Century Park East, Third Floor, Los Angeles, California 90067-2904.

On November 7, 2008, I served the following document(s):

**NOTICE OF MOTION AND MOTION IN LIMINE FOR AN ORDER EXCLUDING CERTAIN TRIAL WITNESSES AND/OR EXPERT TESTIMONY FROM CERTAIN TRIAL WITNESSES; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE AND DECLARATION OF AARON E. DE LEEST IN SUPPORT THEREOF**

on the interested parties addressed as follows:

Attorneys for Integrated Mechanical Systems
Randall S. Guritzky, Esq.
Gladych & Associates
1400 Bristol Street North, Suite 270
Newport Beach, CA  92660

(By Mail) I placed the document for collection and deposit in the mail. I am familiar with this firm's practice for the collection and processing of correspondence for mailing. Under that practice, the document would be placed in a sealed envelope and deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at 2029 Century Park East, Third Floor, Los Angeles, California 90067-2904, in the ordinary course of business. The documents served were placed in sealed envelopes and placed for collection and mailing following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct.

Executed on November 7, 2008, at Los Angeles, California.

_____          _____
Martha Gonzalez                                              (Signature)
(Type or print name)

330755.01 [XP]     24132