1 | John A. Gladych, Esq., Bar No. 139254
Randall S. Guritzky, Esq., Bar No. 119784
2 | GLADYCH & ASSOCIATES
1400 Bristol Street North, Suite 270
3 | Newport Beach, CA 92660
Telephone: (949) 442-8942
4 | Fax No.:    (949) 442-8949

5

Attorneys for Defendant, INTEGRATED
6 | MECHANICAL SYSTEMS, INC.

FILED

NOV 26 2008

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:               Deputy Clerk

7

8 | UNITED STATES BANKRUPTCY COURT

9 | CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

10

11 | In re:                                    ) LA 04-35757-VZ
                                           )
12 | PECK/JONES CONSTRUCTION                    ) Chapter 7
     CORPORATION,                              )
13 |                                           ) Adv. No. 07-01050-VZ
                          Debtor.             )
14 | _____           )
                                           ) **OPPOSITION TO PLAINTIFF'S NOTICE
15 | R. TODD NEILSON, CHAPTER 7 TRUSTEE,    ) OF MOTION AND MOTION IN LIMINE
                                           ) FOR AN ORDER EXCLUDING CERTAIN
16 |                          Plaintiff,        ) TRIAL WITNESSES AND/OR EXPERT
                                           ) TESTIMONY FROM CERTAIN TRIAL
17 | vs.                                       ) WITNESSES**
                                           )
18 | INTEGRATED MECHANICAL SYSTEMS,         ) HEARING DATES PENDING:
     INC., a California corporation,          ) PRE-TRIAL CONFERENCE
                                           ) DATE: December 11, 2008
19 |                                           ) TIME:  11:30 A.M.
                          Defendant.          ) ROOM: 1368
20 |                                           )

21

22 | 1.   **INTRODUCTION/STATEMENT OF FACTS**

23

24 |      Defendant, INTEGRATED MECHANICAL SYSTEMS, INC. ("IMS") is a subcontractor

25 | which supplies and installs, as part of its ordinary course of business, heating, ventilating, and air

conditioning ("HVAC") to construction projects. On or about March 12, 2002, Robert F. Kennedy
26

27 | Medical Center ("RFK") and PECK/JONES CONSTRUCTION CORPORATION ("Peck/Jones" or

28

G:\384.101\OPP MO EXCLUDE MPA.DOC            1

**OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE FOR AN ORDER EXCLUDING CERTAIN TRIAL
WITNESSES AND/OR EXPERT TESTIMONY**

ORIGINAL

"Debtor") entered into a "Standard Form of Agreement Between Owner and Contractor" (the

"Contract") for a project commonly known as the Robert F. Kennedy Medical Center Psychiatric

Unit/Central Storage Remodel and New Patient Tower. The "General Conditions of the Contract for

Construction" (the "General Conditions") were incorporated by reference into the Contract. The

general form of the Contract and the General Conditions were both drafted by the American Institute

of Architects ("AIA"), but certain modifications were made to the forms by the parties. The

Contract is AIA Document A111-1997, and the General Conditions is AIA Document A201-1997.

In its capacity as general contractor on the Project, Peck/Jones required HVAC materials to

be furnished and installed by IMS to the Project in a Subcontract Agreement executed between

Peck/Jones and IMS dated November 24, 2003. In the ordinary course, IMS sent a preliminary 20-

Day Notice via certified mail to the owner and Peck/Jones. IMS submitted invoices to Peck/Jones

for payment of monies representing the progress portion of monies then due and owing to IMS for

labor and materials provided to the Project.

On or about July 1, 2004, Peck/Jones submitted a certain "Payment Application" to

RFK for the period ending June 30, 2004 for the Project. The total amount sought by

Peck/Jones from the owner in the Payment Application was $728,008.13. The total amount

sought by Peck/Jones from the owner in the Payment Application included money for HVAC

furnished and installed by IMS at the Project. RFK paid Peck/Jones the sum of $651,506,

representing the full amount Peck/Jones sought in the Payment Application less certain

credits. Peck/Jones deposited this check into its general account on August 20, 2004.

On or about September 27, 2004, and October 4, 2004, Peck/Jones issued checks to

IMS which are the checks that the Trustee alleges were preferential transfers to IMS. IMS

contends that it has, amongst other defenses, a complete and valid defense/exception to the

preferential payment statute under Section 547(c)(2) of the United States Bankruptcy Code

since the payments in question were:

"(A) in payment of a debt incurred by the debtor in the ordinary course of business or

financial affairs of the debtor and the transferee;

**OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE FOR AN ORDER EXCLUDING CERTAIN TRIAL
WITNESSES AND/OR EXPERT TESTIMONY**

1

2

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

3

(C) made according to ordinary business terms."

4

5

## 2.   IMS'S EXPERT WITNESSES

6

As to the subject of the Trustee's Motion, IMS retained the expert witness services of

7

Stefan Malczewski.  Mr. Malczewski's Curriculum Vitae is attached as Exhibit "A" to the

8

Declaration of Stefan Malczewski.

9

Mr. Malczewski's performed an analysis of the fact and documents related to IMS,

10

Peck/Jones, and RFK, and thereafter prepared his Preliminary Expert Report.   Mr.

11

Malczewski's Preliminary Expert Report sets forth the sequence of events that describe an

12

"ordinary course of business" transaction and relationship between the Debtor and IMS, the

13

transferee.

14

With regard to the construction project at issue, as with many construction projects,

15

the contract between the Debtor, as general contractor and RFK, the owner, imposed

16

requirements upon Peck/Jones before Peck/Jones could receive each progress payment on

17

the Project.

18

First, before Peck/Jones could receive each progress payment, the owner required

19

Peck/Jones to obtain from each material supplier and subcontractor, including IMS, a form

20

whereby IMS agreed to waive and release its rights to file a mechanic's lien on the owner's

21

property upon receipt of payment, entitled "Conditional Waiver and Release upon Progress

22

Payment".

23

Next, after Peck/Jones received each progress payment, but before the next progress

24

payment would be submitted to Peck/Jones, the owner required Peck/Jones to obtain from

25

each material supplier and subcontractors, including IMS, a written document whereby the

26

supplier or subcontractor unconditionally waived and released its right to file a mechanic's

27

lien on the owner's property after the subcontractor or supplier received payment for the

28

G:\384.101\OPP MO EXCLUDE MPA.DOC                3

**OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE FOR AN ORDER EXCLUDING CERTAIN TRIAL
WITNESSES AND/OR EXPERT TESTIMONY**

labor and/or materials it provided to the Project, entitled "Unconditional Waiver and Release", in which IMS released its mechanic's lien and stop notice rights in the amount of the payment IMS received.

Before any subsequent progress payment would be submitted to Peck/Jones, the owner required Peck/Jones to certify in each payment application that the amounts received from the owner requested in previous payment applications had been paid to the material suppliers and subcontractors. Mr. Malczewski's report addresses all of these matters at issue.

IMS also seeks to offer its Vice President to testify as an expert in this case. Mr. Armenian, as a party expert, did not prepare a report. However, as is noted in his Declaration, he is competent to testify on the issues raised by the Trustee as to the "ordinary course of business". Mr. Armenian, who has been in the construction industry for twenty-four (24) years, is also qualified to testify as an expert in this case on the subject matter at issue, based upon his experience in the construction industry.

Thus, IMS seeks to offer expert testimony on the "ordinary course of business defense", a defense to the preferential payment claims of the Trustee. The basis for the opinions is formed upon the contractual terms of the respective contracts and the nature of the dealings and transactions between the respective parties.

There is no merit in the Trustee's Motion that the testimony of Steve Malczewski or Vachik Armenian should be excluded.

## 3. ARGUMENT

### A.        Standard of Review

*Federal Rules of Evidence* Rule 702 states as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of

OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE FOR AN ORDER EXCLUDING CERTAIN TRIAL WITNESSES AND/OR EXPERT TESTIMONY

reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Federal Rules of Evidence* Rule 703 states, in pertinent part:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

Thus, it is apparent that expert testimony in this case falls under one of three categories: (1) scientific testimony, which must be supported by scientific data; (2) technical testimony; and (3) testimony re specialized knowledge. In this third category, an expert may be qualified on the basis of his or her experience alone, and no scientific data need be provided (See Schwarzer, Tashima & Wagstaffe, *Rutter Group Prac. Guide: Federal Civ. Pro. Before Trial*, Chapter 11, 8:1500).

An objective standard governs whether a challenged transfer is "ordinary". *In re Kaypro* (1999) 230 B.R. 400, 404. This objective test is satisfied "as long as the payment was made within 'the range of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage'...only dealings so idiosyncratic as to fall outside the broad range should be deemed extraordinary..." *In re Chocolat* 176 B.R. 540, 550.

**B.    Analysis**

1.    IMS's Experts are Qualified to Testify As Experts in this Case Based Upon Their Specialized Knowledge, Skill, Training, Education, and Experience in the Construction Industry.

The Trustee relies heavily on the case of Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993) 509 U.S. 579 in support of its proposition that IMS's experts' testimony should

OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE FOR AN ORDER EXCLUDING CERTAIN TRIAL WITNESSES AND/OR EXPERT TESTIMONY

be excluded in this case. In Daubert, the court provided a two part analysis as to whether expert testimony is admissible. The first prong of the test is whether the findings are "derived by the scientific method", and the second prong is to determine of the testimony is "relevant to the task at hand".

In its analysis, the Trustee focuses on that portion of Federal Rules of Evidence Rule 702 that refers to experts testifying based on "scientific" knowledge. The Trustee apparently wishes to ignore the fact that there are three independent ways an expert can qualify to testify, not just one; the expert's opinions may be ". . . based on (1) scientific, (2) technical or (3) "other specialized knowledge," and that experts can be qualified by "skill, experience, training, or education..." [Emphasis Added].

"An expert may be qualified on the basis of his or her experience alone. Indeed, in certain fields experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." (See Schwarzer, Tashima & Wagstaffe, *Rutter Group Prac. Guide: Federal Civ. Pro. Before Trial*, Chapter 11, 8:1522).

For example, the case of *In re Healthcentral.com* 504 F.3d 775, 791 requires only that the expert "establish the 'broad range' of business terms employed by similarly situated debtors and creditors, including those in financial distress, during the relevant period," and then to opine whether the payments were "ordinary" in relation to those business terms. There is no requirement that IMS produce an expert who can establish in some scientific manner an exact number of days as being "within the ordinary course", and any deviation from that number as being outside of the ordinary course of payment times.

The case of *Kumho Tire Co. Ltd. v. Carmichael* (1999) 526 US 137 is relevant to the discussion. The *Kumho Tire Co. Ltd.* case is one in which the US Supreme Court discussed its holding in *Daubert*, and whether *Daubert* meant that experience alone was not enough for an expert to testify. The Court held:

> "Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases. See, e.g., Brief for Stephen N. Bobo et al. as Amici Curiae 23 (stressing the scientific bases of engineering disciplines).

**OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE FOR AN ORDER EXCLUDING CERTAIN TRIAL WITNESSES AND/OR EXPERT TESTIMONY**

1

2

In other cases, the relevant reliability concerns may focus upon personal knowledge or experience. As the Solicitor General points out, there are many different kinds of experts, and many different kinds of expertise. See Brief for United States as Amicus Curiae 18-19, and n. 5 (citing cases involving experts in drug terms, handwriting analysis, criminal modus operandi, land valuation, agricultural practices, railroad procedures, attorney's fee valuation, and others). Our emphasis on the word "may" thus reflects Daubert's description of the Rule 702 inquiry as 'a flexible one'." *Kumho Tire Co. Ltd.*, 509 U.S., at 594.

3

4

5

6

7

*Daubert* makes it clear that the factors it mentions do not constitute a "definitive

8

checklist or test." Id., at 593.  Further, *Daubert* adds that the gatekeeping inquiry must be

9

"tied to the facts" of a particular "case." *Id.*, at 591 (quoting *United States v. Downing*, 753

10

F.2d 1224, 1242 (C.A.3 1985)). We agree with the Solicitor General that "[t]he factors

11

identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the

12

nature of the issue, the expert's particular expertise, and the subject of his testimony." Brief

13

14

for United States as Amicus Curiae 19. "The conclusion, in our view, is that we can neither

15

rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in

16

*Daubert*, nor can we now do so for subsets of cases categorized by category of expert or by

17

kind of evidence. Too much depends upon the particular circumstances of the particular case

18

19

at issue. *Daubert* itself is not to the contrary. It made clear that its list of factors was meant to

20

be helpful, not definitive. Indeed, those factors do not all necessarily apply even in every

21

instance in which the reliability of scientific testimony is challenged. It might not be

22

surprising in a particular case, for example, that a claim made by a scientific witness has

23

24

never been the subject of peer review, for the particular application at issue may never

25

previously have interested any scientist."

26

27

28

**OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE FOR AN ORDER EXCLUDING CERTAIN TRIAL
WITNESSES AND/OR EXPERT TESTIMONY**

1    In *First Tennessee Bank et al v. Barreto* (6th Cir. 2001) 268 F.3d 319, the Court

2    discussed the Supreme Court's holding in *Kumho Tire*, and then held: "Contrary to First

3    Tennessee's argument, the fact that [the proffered expert's] opinions may not have been

4    subjected to the crucible of peer review, or that their validity has not been confirmed through

5    empirical analysis, does not render them unreliable and inadmissible.

6

7    In *United States v. Jones* (6th Cir. 1997) 107 F.3d 1147, 1158, cert. denied, 521 U.S.

8    1127, 117 S.Ct. 2527, the court recognized that the four specific factors utilized in *Daubert*

9    may be of limited utility in the context of non-scientific expert testimony. "In reaching this

10   conclusion, we find the Daubert reliability factors unhelpful in the present case, which

11   involves expert testimony derived largely from Iorlano's own practical experiences

12   throughout forty years in the banking industry. Opinions formed in such a manner do not

13   easily lend themselves to scholarly review or to traditional scientific evaluation.

14   Consequently, we find no merit in First Tennessee's argument that Iorlano's testimony lacked

15   sufficient indicia of reliability, and therefore was inadmissible, under the guidelines

16   established by Daubert."

17

18   In *Hynix Semiconductor, Inc. v. Rambus Inc.* 2008 WL 73681 (N.D. CA 2008), the U.S.

19   District Court for the Northern District of California discussed the Sixth Circuit's holding in

20   First Tennessee, and stated: "Experience is often the only basis for reliable expert testimony.

21   See *Federal Rules of Evidence* Rule 702, adv. committee note (2000). An expert who relies on

22   experience, however, must "explain how that experience leads to the conclusion reached,

23   why the experience is a sufficient basis for the opinion, and how that experience is reliably

24   applied to the facts."

**OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE FOR AN ORDER EXCLUDING CERTAIN TRIAL
WITNESSES AND/OR EXPERT TESTIMONY**

1    Again, the issues present for expert analysis in a construction industry setting are not

2    of a "scientific" nature.  The testimony of Mr. Malczewski and Mr. Armenian is admissible

3    based upon "other specialized knowledge" under FRE 702.

4

5    IMS' retained expert, Stefan Malczewski, has in excess of <u>thirty (30) years of</u>

6    <u>experience</u> in the construction industry.  His experience includes construction of numerous

7    private works projects, including approximately twenty (20) projects of similar size and

8    scope to the project at issue in this case.  He is the President and owner of Pacific West

9    Mechanical and partner of West Coast Fire Protection. Pacific West Mechanical is a

10   Southern California Mechanical Contractor specializing in all aspects of piping for

11   industrial, commercial and institutional buildings.

12

13   While the Trustee wishes to characterize Mr. Malczewski as merely being a "plumer"

14   (sic), as if that might somehow render him unqualified, his qualifications and licensing show

15   otherwise.  Mr. Malczewski's Curriculum Vitae, attached hereto, makes it clear that he has

16   extensive experience in all aspects of construction relating to both private works projects and

17   public works projects.  He possesses a B-General Building Contractor's License, a C16-Fire

18   Protection Contractor's License, and a C36-Plumbing Contractor's License, all of which

19   were issued by the California Contractors State License Board.  Further, he is a member of

20   numerous trade organizations.  Mr. Malczewski has testified as an expert before, although,

21   based upon the legal standard, having done so is certainly not a prerequisite for testifying in

22   this case.

23

24   It is also apparent that the Trustee did not make any significant inquiry at Mr.

25   Malczewski's deposition as to Mr. Malczewski's qualifications to testify as an expert in this

26

27

28

G:\384.101\OPP MO EXCLUDE MPA.DOC                    9

OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE FOR AN ORDER EXCLUDING CERTAIN TRIAL
WITNESSES AND/OR EXPERT TESTIMONY

case. Counsel for the Trustee did not ask probing questions of Mr. Malczewski as to his experience. Presumably, the Trustee found, based upon its limited questioning on the subject of qualifications, that Mr. Malczewski was so qualified.

The same is true for Mr. Armenian. As stated in the Declaration of Vachik Armenian, Mr. Armenian has extensive knowledge and experience in the construction industry, approximately twenty (24) years, in the construction industry. He is the Vice President of IMS and currently holds the position of project executive, which includes supervision of project managers and accounting. His experience also includes construction of numerous private works projects, such as the project at issue in this case. In fact, he has experience on at least hundreds and hundreds of private works projects, including approximately fifteen (15) – twenty (20) such private works projects of a similar size and scope as the RFK project. His experience is broken down into a percentage of approximately 95% private works projects, 5% public works projects. Mr. Armenian has extensive experience in all aspects of construction relating to both private works projects and public works projects. IMS possesses a C20-HVAC Contractor's license, issued by the California Contractors State License Board. Further, IMS is a member of "ASHRAY", the American Society of Heating Refrigeration Air Conditioners Inc., as well as "ACSMA", Air Conditioning Sheet Metal Association, and others. Mr. Armenian is qualified to give expert testimony on the subject matter and the issue of the "ordinary course of business" nature of the relationship between the Debtor and IMS.

4. **CONCLUSION**

*Federal Rules of Evidence* Rule 702 and the cases cited herein above provide the basis

OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE FOR AN ORDER EXCLUDING CERTAIN TRIAL
WITNESSES AND/OR EXPERT TESTIMONY

for the admissibility expert witness ". . . specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ". The inquiry as to whether the course of dealings between a general contractor, such as the Debtor in this case, and a subcontractor, such as IMS in this case, is an area where specialized knowledge may assist the trier of fact. If expert testimony is to be allowed at all by this Court, then IMS's experts qualify to provide it. There is no "scientific" formula to whether a course of dealings is ordinary, or in fact, extraordinary; it is an analysis of the totality of the circumstances by an individual who has been involved in the same or similar circumstances dozens if not hundreds of times.

Therefore, based upon the foregoing, INTEGRATED MECHANICAL SYSTEMS, INC. respectfully requests that this Court deny Plaintiff, R. TODD NEILSON, CHAPTER 7 TRUSTEE's Motion to Exclude the Testimony of Stefan Malczewski and Vachik Armenian in this case.

Dated:   November 26, 2008

Respectfully Submitted,

GLADYCH & ASSOCIATES, INC.

By: _____
JOHN A. GLADYCH, ESQ.
RANDALL S. GURITZKY, ESQ.
Attorneys for Defendant INTEGRATED
MECHANICAL SYSTEMS

OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE FOR AN ORDER EXCLUDING CERTAIN TRIAL
WITNESSES AND/OR EXPERT TESTIMONY

## CERTIFICATE OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and am not a party to the within action. My business address is 1400 Bristol Street North, Ste. 270, Newport Beach, CA 92660.

On **November 26, 2008** I served the within document(s) described as: **OPPOSITION TO PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE FOR AN ORDER EXCLUDING CERTAIN TRIAL WITNESSES AND/OR EXPERT TESTIMONY FROM CERTAIN TRIAL WITNESSES,** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

(✓)    **BY PERSONAL SERVICE:**  I caused said document(s), to be hand-delivered by First Legal Suppport Services on the above date to the parties at the address(es) listed on the attached   Service List.

( )    **BY MAIL:**  I caused said documents, enclosed in sealed envelope(s), with postage fully prepaid, to be placed in the U.S. Mail at Newport Beach, California on the above date, addressed to those parties as indicated on the attached Service List. I am readily familiar with the firm's practice for collection and processing of mail. It is deposited with the U.S. Postal Service on the same day in the ordinary course of business.

( )    **BY FACSIMILE:**  I caused the above-referenced documents to be transmitted during normal business hours via facsimile from "Fax" no. 949-442-8946/9 to the parties and at the "Fax" numbers listed on the attached service list and I received electronic verification that said documents had been received complete and without error at the listed facsimile numbers. A copy of the transmission record is attached to this declaration.

Executed on November 26, 2008 at Newport Beach, California.

( ) **(State)**  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

( ✓) **(Federal)**  I declare that I am employed in the office of a member of the bar of this court at whose direction this service was made.

JANELLE JAMES

G:\384.101\OPP MO EXCLUDE MPA.DOC          12

**OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE FOR AN ORDER EXCLUDING CERTAIN TRIAL WITNESSES AND/OR EXPERT TESTIMONY**

1 | **PECK/JONES, Debtor/NEILSON v. INTEGRATED MECHANICAL SYSTEMS, INC.**
U.S. Bankruptcy Court, Central District Case No. ADV. NO. 07-01050-VZ

2

3 | **SERVICE LIST**

4

**Atty. for Plaintiff R. TODD NEILSON, CHAP. 7 TRUSTEE:**

5 | John N. Tedford IV, Esq.
DANNING, GILL, DIAMOND & KOLLITZ, LLP

6 | 2020 Century Park East, 3rd Floor
Los Angeles, CA 90067

7 | Tel:    (310) 277-0077
Fax:    (310) 277-5735

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 | G:\384.101\OPP MO EXCLUDE MPA.DOC          13

**OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE FOR AN ORDER EXCLUDING CERTAIN TRIAL WITNESSES AND/OR EXPERT TESTIMONY**