1  John A. Gladych, Esq., Bar No. 139254
   Randall S. Guritzky, Esq., Bar No. 119784
2  GLADYCH & ASSOCIATES
   1400 Bristol Street North, Suite 270
3  Newport Beach, CA 92660
   Telephone: (949) 442-8942
4  Fax No.:     (949) 442-8949

5

   Attorneys for Defendant, INTEGRATED
6  MECHANICAL SYSTEMS, INC.

```
┌──────────────────────────────────┐
│            FILED                   │
│                                    │
│         NOV 26 2008                │
│                                    │
│   CLERK U.S. BANKRUPTCY COURT      │
│  CENTRAL DISTRICT OF CALIFORNIA    │
│   BY:            Deputy Clerk      │
└──────────────────────────────────┘
```

7

8                    UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

10

11  In re:                              )  LA 04-35757-VZ
                                        )
12  PECK/JONES CONSTRUCTION             )  Chapter 7
    CORPORATION,                        )
13                                      )  Adv. No. 07-01050-VZ
                                        )
14                          Debtor.     )  **DECLARATION OF STEFAN M.**
    ────────────────────────────────    )  **MALCZEWSKI IN OPPOSITION TO**
15  R. TODD NEILSON, CHAPTER 7          )  **PLAINTIFF'S MOTION FOR AN**
    TRUSTEE,                            )  **ORDER EXCLUDING WITNESSES**
16                                      )
                            Plaintiff,  )  HEARING DATES PENDING:
17                                      )  PRE-TRIAL CONFERENCE
    vs.                                 )  DATE:        December 11, 2008
18                                      )  TIME: 11:30 A.M.
    INTEGRATED MECHANICAL SYSTEMS,      )  ROOM: 1368
19  INC., a California corporation,     )
                                        )
20                          Defendant.  )
                                        )
21  ────────────────────────────────

22

23       I, STEFAN M. MALCZEWSKI, declare as follows:

24       I am over the age of eighteen.  I am the owner of PACIFIC WEST MECHANICAL,

25  INC.  My business address is 20710 Manhattan Place, Torrance, California.  I have personal

26

27

28                                      1

knowledge of the matters stated herein and if called as a witness I could and would testify competently thereto and under oath.

1.    Attached hereto as Exhibit "A" is a true and correct copy of my most current Curriculum Vitae.

2.    The statements contained in the attached Exhibit "A" Curriculum Vitae are true and correct.

3.    In my thirty (30) years of experience in the construction industry, I have worked on at least twenty (20) private works projects similar in the size and scope of the RFK project at issue in this case.  Further, of those projects, I have worked on approximately five (5) construction projects where my company was a subcontractor to Peck/Jones as the general contractor.

4.    Attached hereto as Exhibit "B" is a true and correct copy of Preliminary Expert Report that I prepared following my analysis of the project documents and files related to the RFK project and IMS's involvement with the RFK project.  Based upon my review of the extensive documentation, and my vast knowledge and experience in the construction industry, it is my conclusion that the payments at issue in this case were in payment of a debt incurred by Peck/Jones in the ordinary course of business or financial affairs of Peck/Jones and IMS, that the payments were made in the ordinary course of business or financial affairs of Peck/Jones and IMS and made according to ordinary business terms.  The process followed by IMS of serving its California Twenty Day Preliminary Notice prior to providing labor and materials to the project; of submitting Invoices and Payment Applications; of providing Conditional Waivers and Releases for Progress Payments; and providing

1  Unconditional Waivers and Releases by IMS, in exchange for payments by the general

2  contractor, i.e., Peck/Jones in this case, and the submission of documents by Peck/Jones to

3  RFK in exchange for its receipt of payment who then in turn paid IMS, are ordinary course

4  of business transactions, made pursuant to the ordinary course of business between

5  Peck/Jones and IMS, and pursuant to ordinary business terms.

7      I declare under the penalty of perjury under the laws of the United States of America

8  that the foregoing is true and correct. Executed this 25th day of November, 2008, at

9  Torrance, CA.

10

11

12  DATED:  11/25/08

13

14

15                    Stefan M. Malczewski, Declarant

3

# Exhibit "A"

CURRICULUM VITAE OF STEFAN MALCZEWSKI

Stefan Michael Malczewski
2662 West 234th Street
Torrance, California 90505

**Date & Place of Birth:** September 1, 1954 Toronto, Canada

**Professional Experience:**
Stefan Malczewski has over 30 years experience in the construction industry. His experience includes sales, project management, project estimation, quality control, design and building of private works projects and public works projects.

Stefan Malczewski is the President and sole owner of Pacific West Mechanical and partner of West Coast Fire Protection. Pacific West Mechanical is a Southern California Mechanical Contractor specializing in all aspects of piping for industrial, commercial and institutional buildings. Mr. Malczewski is responsible for contracts, negotiations, operations, marketing and quality control, as well as oversight of estimation, design/build, engineering, CAD drawings, scheduling and project management.

**Executive Vice President:**
Stefan Malczewski **was** the Executive Vice President for operations of Western States Mechanical. As such, he was responsible for oversight of billing, project management, estimating and purchasing. Mr. Malczewski implemented seismic bracing and design build construction for Cedars Sinai Medical Center. Mr. Malczewski also performed schedule and job cost analysis for Western States Mechanical.

Stefan Malczewski has been employed as Project Manager at Western States Mechanical and was responsible for organizing and scheduling projects. This included job costing, billing, value engineering, submittals and coordination with owners/construction managers.

Stefan further served as an estimator where he performed estimation of all aspects of piping and plumbing for industrial, commercial and institutional buildings. His experience includes aerospace, electronics, food processing, medical office, petroleum manufacturing, as well as in applications such as high technology laboratories, parking structures, high rise office buildings, clean room manufacturing and retail/commercial real estate development.

Stefan also served in the capacity of foreman where he was responsible to direct, motivate and track the production on construction projects. Principle duties included reading job plans and determining the scope of work, reading and job specifications to determine the proper types of

material needed on the job, and ensuring the presence of the proper tools and equipment for the tasks to be completed.

**Education:**
Torrance High School: 4 years
El Camino College: 2 years
A & J Plumbing/Pipefitting: 4 years

**Professional licenses:**
B General Building Contractor
C16 Fire Protection Contractor
C36 Plumbing Contractor

**Professional Organizations:**
American Society of Plumbing Engineers (ASPE)
California Plumbing & Mechanical Contractors Association (CPMCA)- Current President
Mechanical Contractors Association of America (MCAA)
Apprentice and Journeymen Training Trust Fund Management Trustee (A&J)
Apprentice and Journeymen Training Trust Fund Financial Officer (A&J)

**Community Service:**
Coach Palos Verdes High School varsity ice hockey program
Coached roller hockey in Torrance Parks & Recreation

**Recent Expert Witness project:**
Akbarzadeh Residence

Expert Witness fee: $225.00/hr.

Exhibit "B"

1  GLADYCH & ASSOCIATES, INC.
   John A. Gladych, Esq., Bar No. 139254
2  Randall S. Guritzky, Esq., Bar No. 119784
   1400 Bristol Street North, Suite 270
3  Newport Beach, CA 92660
   Tel:  (949) 442-8942
4  FAX: (949) 442-8949

5  Attorneys  for  Defendant,  INTEGRATED
   MECHANICAL SYSTEMS, INC.

6

7

8                  UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

10

11 In re:                          )  CASE NO.  LA 04-35757-VZ
                                    )
12 PECK/JONES CONSTRUCTION          )  Chapter 7
                                    )
13 CORPORATION,                     )  Adv. No. 07-01050-VZ
                                    )
14              Debtor.             )  **PRELIMINARY EXPERT REPORT OF**
   _____)  **STEPHAN MALCZEWSKI**
15                                  )
   R. TODD NEILSON, CHAPTER 7 TRUSTEE, )
16                                  )
                Plaintiff,          )  HEARING DATES PENDING:
17                                  )  Pre-TRIAL Conference: August 21, 2008
   vs.                              )
18                                  )
   INTEGRATED MECHANICAL SYSTEMS,   )
19 INC., a California corporation,  )
                                    )
20              Defendants.         )
   _____)
21

22       Defendant, INTEGRATED MECHANICAL SYSTEMS, INC. submits its Preliminary Expert

23 Report as follows:

24 DATED: June ⊃ , 2008.       GLADYCH & ASSOCIATES, INC.

25

26                          By:

27                             RANDALL S. GURITZKY, Esq.
                                Attorneys for Defendant, INTEGRATED
28                                MECHANICAL SYSTEMS, INC.

**PRELIMINARY REPORT OF STEPHAN MALCZEWSKI**

**In Re:**
**R. Todd Neilson v. Integrated Mechanical Systems, Inc.**
**(Adversary Proceeding)**

June 3, 2008

**Related To:**
**Bankruptcy of Peck/Jones Construction Corporation**

**Case No.: 2:04:35757-VZ**

**Adversary Case No.: 2:07-01050-VZ**

I have been asked to provide an opinion on Ordinary Course of Business According to Ordinary Business Terms. In my opinion the Subcontract Agreement was ordinary. I have also been asked to provide an opinion on Trust Fund Issues. Attached are my findings related to the subject matter:

## ORDINARY COURSE OF BUSINESS ACCORDING TO ORDINARY BUSINESS TERMS

Peck/Jones, general contractor on the RFK, required HVAC materials to be furnished and installed by IMS to the Project in a Subcontract Agreement executed between Peck/Jones and IMS dated November 24, 2003. IMS sent a preliminary 20-Day Notice via certified mail to the owner and Peck/Jones. IMS submitted monthly progress invoices to Peck/Jones for payment due to IMS for labor and materials provided to the Project.

On July 1, 2004, Peck/Jones submitted Payment Application 34 to RFK for the period ending June 30, 2004 for the amount of $728,008.13. The total amount sought by Peck/Jones from the owner in Payment Application #34 included money for HVAC furnished and installed by IMS at the Project. RFK paid Peck/Jones the sum of $651,506.13 in Check Number 221078, representing the full amount Peck/Jones sought in Payment Application #34 less certain credits. Peck/Jones deposited this check into its general account on August 20, 2004.

On September 27, 2004, and October 4, 2004, Peck/Jones issued checks to IMS which are the checks that the Trustee claims were preferential transfers to IMS. By this transaction, Peck/Jones disbursed RFK's trust funds to IMS for the HVAC materials furnished by IMS to the Project.

Before Peck/Jones could receive each progress payment, the owner required Peck/Jones to obtain from each material supplier and subcontractor, including IMS, a written document where the supplier or subcontractor agreed to waive and release its rights to file a mechanic's lien on the owner's property upon receipt of payment. IMS waived its mechanic's lien rights upon receipt of payment for the HVAC materials furnished and

installed at the Project by submitting a document entitled "Conditional Waiver and Release Upon Progress Payment" to Peck/Jones in September 2004.

Before the next progress payment would be submitted to Peck/Jones, the owner required Peck/Jones to obtain from each material supplier and subcontractors, including IMS, a written document where the supplier or subcontractor unconditionally waived and released its right to file a mechanic's lien on the owner's property after the subcontractor or supplier received payment for the labor and materials it provided to the Project. After receiving payment from Peck/Jones, IMS submitted to Peck/Jones an "Unconditional Waiver and Release" in which IMS released its mechanic's lien and stop notice rights in the amount of the payment IMS received.

Before any progress payment would be submitted to Peck/Jones, the owner required Peck/Jones to certify in each payment application that the amounts received from the owner requested in previous payment applications had been paid to the material suppliers and subcontractors.

Under Section 547(c)(2) of the *United States Bankruptcy Code* applicable at the time the within action was filed, the Trustee may not avoid a preferential transfer to the extent the transfer was:

"(A) In payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) Made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(c) Made according to ordinary business terms.

The progress payment to IMS from Peck/Jones was on account of a debt incurred by Peck/Jones in the ordinary course of business between Peck/Jones and IMS. In its ordinary capacity as a General Contractor, Peck/Jones required HVAC equipment to be furnished to and installed in the Project. After furnishing and installing HVAC equipment to the Project as required by Peck/Jones, IMS submitted invoices to Peck/Jones for the labor and materials provided by IMS.

The alleged payment to IMS was on account of a debt incurred by Peck/Jones in the "ordinary course of business" within the meaning of 11 *U.S.C.* §547(c)(2).

Peck/Jones, in its capacity as general contractor on the Project, required HVAC equipment to be delivered to the Project in a Subcontract Agreement executed between Peck/Jones and IMS. IMS then submitted invoices to Peck/Jones for the HVAC materials installed at the Project. Pursuant to the owner's requirements discussed above, IMS offered to waive its mechanic's lien rights upon receipt of payment for the HVAC equipment supplied to the Project by submitting a document entitled "Conditional Waiver and Release upon Progress Payment" to Peck/Jones. After receiving payment from Peck/Jones, pursuant to the owner's requirements, IMS submitted to Peck/Jones a document entitled "Unconditional Waiver and Release" in which IMS released its mechanic's lien and stop notice rights in the amount of the payment IMS received.

According to the foregoing, the disbursement of funds from Peck/Jones to IMS was squarely within the terms of the purchase order between Peck/Jones and IMS, as Peck/Jones disbursed the funds requested by IMS's invoices by the 20th of the month following submission of IMS's invoices. Additionally, the disbursement of funds from Peck/Jones to IMS was entirely consistent with the requirements enforced by the owner, as IMS submitted a conditional waiver and release before receiving funds from Peck/Jones, and an unconditional waiver and release after receiving funds from Peck/Jones.

The alleged progress payment to IMS was disbursed within the terms of the Subcontract Agreement between IMS and Peck/Jones. Therefore, the alleged progress payment was made within the ordinary course of business within the meaning of 11 *U.S.C.* §547(c)(2).

It is the ordinary custom and practice of Peck/Jones to enter into Subcontract Agreements with its subcontractors to supply labor and materials to construction projects such as the one at issue in this case. Consequently, the alleged progress payment was paid in accordance with ordinary business terms within the meaning of 11 *U.S.C.* §547(c)(2).

Because it is undisputed that the alleged progress payment to IMS was on account of a debt incurred by Peck/Jones in the ordinary course of business, and because it is

undisputed that the alleged payment was paid in the ordinary course of business, and because
it is undisputed that the alleged payment was made in accordance with ordinary business
terms, IMS has a complete "ordinary course" defense to the Trustee's claims under
§547(c)(2).

The billing cycle was ordinary and the payment cycle was ordinary. There was
nothing unusual or exceptional with this project.

### TRUST FUNDS

On March 12, 2002, Robert F. Kennedy Medical Center ("RFK") and Peck/Jones
entered into a Standard Form of Agreement Between Owner and Contractor (the "Contract"
for a project commonly known as the Robert F. Kennedy Medical Center Psychiatric
Unit/Central Storage Remodel and New Patient Tower (the "Project"). The General
Conditions of the Contract for Construction (the "General Conditions") were incorporated by
reference into the Contract. The general form of the Contract and the General Conditions
were both drafted by the American Institute of Architects ("AIA"), but certain modifications
were made to the forms by the parties. The Contract
is AIA Document A111-1997, and the General Conditions is AIA Document A201-1997

Section 9.6.7 of the General Conditions states:

In its capacity as general contractor on the Project, Peck/Jones required HVAC
materials to be furnished and installed by IMS to the Project in a Subcontract Agreement
executed between Peck/Jones and IMS dated November 24, 2003. IMS sent a preliminary
20-Day Notice via certified mail to the owner and Peck/Jones. IMS submitted invoices to
Peck/Jones for payment representing the progress portion of monies then due and owing to
IMS for labor and materials provided to the Project. The invoices were received by
Peck/Jones in September, 2004.

On or about July 1, 2004, Peck/Jones submitted Payment Application 34 to RFK for

the period ending June 30, 2004 for the Project. The total amount sought by Peck/Jones from the owner in Payment Application #34 was $728,008.13. The total amount sought by Peck/Jones from the owner in Payment Application #34 included money for HVAC furnished and installed by IMS at the Project. RFK paid Peck/Jones the sum of $651,506.13 in Check Number 221078, representing the full amount Peck/Jones sought in Payment Application #34 less certain credits. Peck/Jones deposited this check into its general account on August 20, 2004.

On September 27, 2004, and October 4, 2004, Peck/Jones issued checks to IMS which are the checks that the Trustee alleges were preferential transfers to IMS. By this transaction, Peck/Jones disbursed RFK's trust funds to IMS for the HVAC materials furnished by IMS to the Project.

Section 9.6.7 of the General Conditions states:

"Unless the Contractor provides the owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with the money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

"It is customary in the construction industry for general contractors to hold funds received from the owner in trust for subcontractors and material suppliers who furnish labor and/or materials to construction projects. By its contract with the Owner, Peck/Jones was required to hold funds it received from the owner in trust for labor and/or materials provided to the Project by suppliers and subcontractors for those material suppliers and subcontractors pursuant to Section 9.6.7 of the General Conditions. This requirement establishes a trust in favor of subcontractors and suppliers of monies received by the contractor by reason of work and materials of its subcontractors and suppliers. This subparagraph gives subcontractors

and suppliers a preference in the event of the contractor's bankruptcy and thereby protects
the owner from lien claims which could have been asserted by those entities had they not
been furnished with this preference. As the recipient of the trust funds, the contractor is
under an obligation to properly apply the funds for the account of the subcontractors and
suppliers."

The Contract detailed the relationship between the parties. With respect to payments
for the numerous parties engaged in actually providing the work, labor and/or materials to
the Project, the Contract created an express trust to benefit those parties and insure that they
received payment, by virtue of Section 9.6.7 of the General Conditions states, in pertinent
part:

Section 9.10.2 of the General Conditions further evidences the creation of an express
trust, stating, in pertinent part:

"...If a Subcontractor refuses to furnish a release or waiver required by the Owner, the
Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against the
lien. If such lien remains unsatisfied after the payments are made, the Contractor shall
refund to the Owner all money that the Owner may be compelled to pay in discharging the
lien, including all costs and reasonable attorneys' fees."

Section 9.10.2 thus obligates Peck/Jones to return any funds it holds in trust for
material suppliers and subcontractors to the owner to compensate the owner for any
unsatisfied liens recorded on the owner's property. As such, it is clear that Peck/Jones did
not hold equitable title to funds it received from the owner for labor and/or materials
furnished by material suppliers and subcontractors to the Project.

The Contract established an express trust, wherein Peck/Jones acted as trustee,
holding funds received from the Owner for material suppliers and subcontractors who
furnished labor and/or materials to the Project. The terms of the express trust permitted
Peck/Jones to commingle the trust funds received from the Owner. Article 9.6.7 of the
Contract provides, "[n]othing herein shall require money to be placed in a separate account
and not commingled with money of the Contractor..." This provision authorized Peck/Jones
to place trust funds in any of its accounts and to mix with its own general funds; there was

no requirement that the trust res be segregated or held in a separate account. As such, all of Peck/Jones' accounts were collectively a repository for the trust res.

The owner transferred funds to Peck/Jones, which Peck/Jones held in valid express trust in its various bank accounts, and that Peck/Jones distributed the trust funds to IMS for the HVAC equipment furnished and installed by IMS in the Project. IMS which are the alleged preferential payment transfers were not the funds Peck/Jones received on or about August 20, 2004, to be held in trust. Therefore, since funds held in trust for another are not 'property of the estate' of the debtor, and because the undisputed facts demonstrate that Peck/Jones paid IMS the funds it held in trust therefor, the Trustee cannot establish that the alleged transfer was a transfer of "an interest of the debtor in property" as required for an avoidable preference in 11 *U.S.C.* ¶547(b).

Peck/Jones paid IMS for labor and materials supplied to the RFK project, per the subcontract agreement, with funds held in trust from the Owner for IMS and their material suppliers.

The foregoing report regarding R. Todd Neilson vs. Integrated Mechanical Systems, Inc., dated June 3, 2008, has been prepared by myself. This report of preliminary findings is based on my review of the AIA Subcontract Agreement between Peck/Jones and IMS, AIA applications for payment, applicable provisions of the Prime Contract, IMS job files and responses of R. Todd Neilson to IMS interrogatories, IMS interrogatory responses and Documents produced.

Steve Malczewski  President PWM

6-3-2008

Date

1

## CERTIFICATE OF SERVICE

2

3
I, the undersigned, certify and declare:

I am employed in the County of Orange, State of California. I am over the age of 18 and not a
4   party to the within action. My business address is 1400 Bristol Street North, Suite 270, Newport Beach,
California 92660.

5
On **June 3, 2008**, I served the following document(s): **PRELIMINARY EXPERT REPORT
6   OF STEPHAN MALCZEWSKI**, on the interested parties in this action by placing a true and correct
copy of each document thereof, enclosed in a sealed envelope, addressed as follows:

7

## SEE ATTACHED SERVICE LIST

8

(✓) **By Mail:** I am readily familiar with Gladych & Associates, Inc.'s business practice for collection
9   and processing of correspondence for mailing with the United States Postal Service. I know that the
correspondence is deposited with the United States Postal Service on the same day this declaration was
10  executed in the ordinary course of business. I know that the envelope was sealed and, with postage
thereon fully prepaid, placed for collection and mailing on this date, following ordinary business
11  practices, in the United States mail at Newport Beach, California.

12
(✓) **By Email:** I caused electronic copies of the above-referenced document(s) in .pdf format to be
13  transmitted during normal business hours from email address: randye@gladychlaw.com to each party
at the email address(es) as indicated on the attached Service List, pursuant to the Court's Order in this
14  matter.  A delivery/read receipt was received/ or no transmission failure notice was received for any
party so served.

15
(_) **By Personal Service:**  I caused such document(s) to be delivered by hand to the parties and at the
16  address(es) indicated on the attached service list.

17  (_) **By Overnight Courier:**  I caused the above-referenced document(s) to be delivered to an overnight
courier service (Federal Express) for delivery to the address(es) as indicated on the attached Service List.

18
( ) **By Facsimile Machine:** I caused the above-referenced document(s) to be transmitted during normal
19  business hours from FAX number(s) 949-442-8946/9 to the persons and at the FAX number(s) for each
party indicated on the attached Service List.  FAX Transmission Report(s) confirming successful
20  transmission were received for each such party.

21      Executed on June 3, 2008, at Newport Beach, California.

22  ( ) **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing
is true and correct.

23
(✓) **(Federal)** I declare that I am employed in the office of a member of the bar of this court at whose
24  direction this service was made.

25

26

27                      MAUREEN A. GENTRY

28

1   **In re PECK/JONES CONSTRUCTION CORP., Debtor/Neilson v. Integrated Mechanical Systems, Inc.**
    US BK Case No. LA 04-35757-VZ; Adv. No. 07-01050-VZ
2

3                             **SERVICE LIST**

4

5   John N. Tedford IV, Esq.                    Attorneys for Plaintiff
    DANNING, GILL, DIAMOND & KOLLITZ, LLP
6   2020 Century Park East, 3rd Floor
    Los Angeles, CA 90067
7   Tel:    (310) 277-0077
    Fax:    (310) 277-5735
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CURRICULUM VITAE OF STEFAN MALCZEWSKI

Stefan Michael Malczewski
2662 West 234th Street
Torrance, California 90505

**Date & Place of Birth:** September 1, 1954 Toronto, Canada

**Professional Experience:**
Stefan Malczewski has over 30 years experience in the construction industry. His experience includes sales, project management, project estimation, quality control, design and building of private works projects and public works projects.

Stefan Malczewski is the President and sole owner of Pacific West Mechanical and partner of West Coast Fire Protection. Pacific West Mechanical is a Southern California Mechanical Contractor specializing in all aspects of piping for industrial, commercial and institutional buildings. Mr. Malczewski is responsible for contracts, negotiations, operations, marketing and quality control, as well as oversight of estimation, design/build, engineering, CAD drawings, scheduling and project management.

**Executive Vice President:**
Stefan Malczewski **was** the Executive Vice President for operations of Western States Mechanical. As such, he was responsible for oversight of billing, project management, estimating and purchasing. Mr. Malczewski implemented seismic bracing and design build construction for Cedars Sinai Medical Center. Mr. Malczewski also performed schedule and job cost analysis for Western States Mechanical.

Stefan Malczewski has been employed as Project Manager at Western States Mechanical and was responsible for organizing and scheduling projects. This included job costing, billing, value engineering, submittals and coordination with owners/construction managers.

Stefan further served as an estimator where he performed estimation of all aspects of piping and plumbing for industrial, commercial and institutional buildings. His experience includes aerospace, electronics, food processing, medical office, petroleum manufacturing, as well as in applications such as high technology laboratories, parking structures, high rise office buildings, clean room manufacturing and retail/commercial real estate development.

Stefan also served in the capacity of foreman where he was responsible to direct, motivate and track the production on construction projects. Principle duties included reading job plans and determining the scope of work, reading and job specifications to determine the proper types of

material needed on the job, and ensuring the presence of the proper tools and equipment for the tasks to be completed.

**Education:**
Torrance High School: 4 years
El Camino College: 2 years
A & J Plumbing/Pipefitting: 4 years

**Professional licenses:**
B General Building Contractor
C16 Fire Protection Contractor
C36 Plumbing Contractor

**Professional Organizations:**
American Society of Plumbing Engineers (ASPE)
California Plumbing & Mechanical Contractors Association (CPMCA)- Current President
Mechanical Contractors Association of America (MCAA)
Apprentice and Journeymen Training Trust Fund Management Trustee (A&J)
Apprentice and Journeymen Training Trust Fund Financial Officer (A&J)

**Community Service:**
Coach Palos Verdes High School varsity ice hockey program
Coached roller hockey in Torrance Parks & Recreation

**Recent Expert Witness project:**
Akbarzadeh Residence
**Second One.**

Expert Witness fee: $225.00/hr.

1

**CERTIFICATE OF SERVICE**

2

    I am employed in the County of Orange, State of California.  I am over the age of 18 and am

3

not a party to the within action. My business address is 1400 Bristol Street North, Ste. 270, Newport
Beach, CA 92660.

4

    On **November 26, 2008** I served the within document(s) described as: **DECLARATION OF**

5

**STEFAN M. MALCZEWSKI IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN
ORDER EXCLUDING WITNESSES,** on the interested parties in this action as follows:

6

**SEE ATTACHED SERVICE LIST**

7

(✓)    **BY PERSONAL SERVICE:** I caused said document(s), to be hand-delivered by First

8

        Legal Suppport Services on the above date to the parties at the address(es) listed on the

9

        attached       Service List.

10

(  )    **BY MAIL:**  I caused said documents, enclosed in sealed envelope(s), with postage fully
        prepaid, to be placed in the U.S. Mail at Newport Beach, California on the above date,

11

        addressed to those parties as indicated on the attached Service List. I am readily familiar
        with the firm's practice for collection and processing of mail.  It is deposited with the U.S.

12

        Postal Service on the same day in the ordinary course of business.

13

(  )    **BY FACSIMILE:** I caused the above-referenced documents to be transmitted during normal

14

        business hours via facsimile from "Fax" no. 949-442-8946/9 to the parties and at the "Fax"
        numbers listed on the attached service list and I received electronic verification that said

15

        documents had been received complete and without error at the listed facsimile numbers. A
        copy of the transmission record is attached to this declaration.

16

17

    Executed on November 26, 2008 at Newport Beach, California.

18

(  ) **(State)** I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

19

( ✓) **(Federal)** I declare that I am employed in the office of a member of the bar of this court at

20

whose direction this service was made.

21

*Janelle James*

22

             JANELLE JAMES

23

24

25

26

27

28

4

**PECK/JONES, Debtor/NEILSON v. INTEGRATED MECHANICAL SYSTEMS, INC.**
U.S. Bankruptcy Court, Central District Case No. ADV. NO. 07-01050-VZ

# SERVICE LIST

**Atty. for Plaintiff R. TODD NEILSON, CHAP. 7 TRUSTEE:**
John N. Tedford IV, Esq.
DANNING, GILL, DIAMOND & KOLLITZ, LLP
2020 Century Park East, 3rd Floor
Los Angeles, CA 90067
Tel:   (310) 277-0077
Fax:   (310) 277-5735

G:\384.101\OPP MO EXCLUDE DEC MALCZEWSKI.DOC